```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

Crystal Gail Waterman,         :

      Plaintiff,            :

   v.                            :         Case No. 2:16-cv-059

                                                   JUDGE GEORGE C. SMITH
Commissioner of Social         :         Magistrate Judge Kemp
Security,

      Defendant.            :

                       REPORT AND RECOMMENDATION

                        I.   Introduction

    Plaintiff, Crystal Gail Waterman, filed this action seeking review of a decision of the Commissioner of Social Security partially denying her applications for disability insurance benefits and supplemental security income.  Those applications were filed on May 4, 2011, and alleged that Plaintiff became disabled on December 18, 2002.

    After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on June 25, 2013, and a supplemental hearing on August 15, 2014.  In a decision dated August 28, 2014, the ALJ concluded that Plaintiff became disabled on April 1, 2013, but not before, and denied her application for disability insurance benefits because her insured status expired on December 31, 2007.  However, her application for supplemental security income was granted effective on April 1, 2013.  That became the Commissioner's final decision on November 24, 2015, when the Appeals Council denied review.

    After Plaintiff filed this case, the Commissioner filed the administrative record on May 9, 2016.  Plaintiff filed a statement of errors on August 25, 2016, to which the Commissioner

responded on December 12, 2016. Plaintiff filed a reply brief on January 17, 2017, and the case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 36 years old as of the date of the first administrative hearing and who has a high school education with two years of trade school, testified as follows. Her testimony appears at pages 56-87 of the administrative record. She testified only at the first hearing.

At that hearing, Plaintiff described her recent work activity. She had worked at a pizza shop in 2010 and 2011 doing sandwich prep and cashier work, but her eyesight got so bad she could no longer do that job. In 2003 she did some collections and customer service work, and she had also worked briefly at a grocery store and as an account manager at Rent-A-Center. She also left the customer service job due to vision problems.

When asked why she could not work, Plaintiff said that she could neither sit nor stand for long periods of time, got migraine headaches twice a week, and could not concentrate due to floaters and flashing lights in her eyes. The problems with eyesight and migraines existed prior to 2007. She had had two surgeries in each eye and was also receiving steroid injections every six months. Her eyes were puffy for a week afterwards and she also had headaches and increased eye pressure. She could not sit at a computer.

Plaintiff also testified that she had muscle spasms in her back and neck. Medication reduced the pain but did not eliminate it. She had also been having issues with periodic swelling in her knees and sharp pains in her hips, which were treated with a cortisone shot.

Counsel asked Plaintiff to estimate how long she could sit, stand, and walk during an eight-hour work day. She said that she could sit for three hours with the need to stand up and walk

around every twenty minutes, could stand for four hours with a need to change positions every fifteen minutes, and could lift a gallon of milk occasionally.

During the day, Plaintiff tried to avoid going outside because of the sunlight. She took care of her son and napped. She was able to attend her son's baseball games by wearing sunglasses and sitting under a canopy. She did laundry with help from her son and did some light cooking. Vacuuming was difficult. She visited with her parents but had no close friends. She could read regular print if she wore reading glasses.

### III.  The Medical Records

The pertinent medical records are found beginning at page 378 of the administrative record. The Court will summarize only those records which relate to Plaintiff's statements of error.

The primary issue raised by Plaintiff is the sufficiency of the interrogatory answers given by Dr. Richards, whom the ALJ sent interrogatories to after the first hearing. In his initial responses (Tr. 1005-1011), Dr. Richards said that no clear listing was met due to limited and incomplete records. He said, however, that there were "significant unresolved medical conditions which potentially could meet or equal a Listing." Some issues he identified were the unreadable records relating to Plaintiff's vison condition, although he noted that "there was is significant visual impairment present." He thought that a summary of her visual fields and acuity in "steady state" would be important. In his view, "added medical evidence and comprehensive evaluation would be necessary to go beyond this point." Finally, his notes indicate concern with Plaintiff's uveitis (pars planitis) with a 2001 onset, stating that the records documented "multiple medical encounters" and "many functional complaints" of disturbed vision and discomfort.

Additional records were then provided, including a summary from Plaintiff's treating opthalmologist, Dr. Opremcak. That summary (Tr. 1020) stated that he had been treating Plaintiff since 2001 for bilateral intermediate uveitis; that she had been treated with periocular corticosteroid injections; that although they controlled her uveitis, she had "frequent recurrences of her ocular inflammation bilaterally"; that she had surgery, which did not resolve the uveitis; and that she had recently been diagnosed with MS, which is a very common cause of her visual condition.

In his further evaluation, Dr. Richards considered a different report (records from Dr. Bauerie) documenting the diagnosis of remitting relapsing multiple sclerosis, and concluded that Plaintiff's impairment equaled section 11.09 of the Listing of Impairments (which deals with MS). He stated that the onset date was difficult to establish because various records showed a lack of symptoms at times and because she had also been sporadically employed after her alleged onset date. With those reservations, he settled on an onset date of April 1, 2013 because the signs and symptoms he needed to find that she had a Listing-level impairment were "difficult to establish prior to April 2013." (Tr. 1021-23).

Finally, as Plaintiff points out, there are records from her opthalmologist dating from prior to the expiration of her insured status. Those records (Tr. 693-711) show that prior to and during 2007 she was being treated for uveitis and pars planitis, and that her symptoms included sharp pain in the eyes, floaters, and photophobia. Her visual acuity was variable. She was treated with steroids, which provided some relief.

### IV. The Vocational Evidence

Vocational experts testified at both administrative hearings. At the first hearing, Nancy Shapero was the expert, and her testimony begins at page 81 of the record. She

-4-

identified Plaintiff's past work as a clerk, a customer service representative, a deli worker, a hotel desk clerk, and an auto parts delivery person.  All of these are unskilled jobs and are typically performed at the light exertional level.  Ms. Shapero was then asked questions about a hypothetical person who could do light work with some restrictions, could read with 3.0 magnification reading glasses, and could perform simple, repetitive tasks.  She said that such a person could do Plaintiff's past work as a deli clerk, desk clerk, or customer service representative.  A limitation on exposure to fluorescent light would eliminate those jobs, but janitorial jobs would remain.

Next, Ms. Shapero was asked how a requirement of a sit/stand option would affect the person's ability to work.  If the option could be accommodated during normal breaks, it would not affect the person's ability to do Plaintiff's past work.  If it required more flexibility, with a break from standing once an hour for five to ten minutes while remaining on task, the past jobs could not be done, but the person could be a price marker, hand packer, or assembler.  Lastly, she testified that a person off task for 20% of the time could not do any of those jobs, nor could a person missing two days of work per month.

At the second administrative hearing, a different expert, Casey Vass, gave some additional vocational testimony.  His testimony appears beginning at page 45 of the record.  He first testified that someone off task more than 10% of the day would not likely be employable.  The same would be true of someone who missed more than 18 days of work per year, or who took a week off every three months.  Finally, Mr. Vass said that an employee is generally expected to have continuous use of his or eyes in the work place.

V. <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 13-28 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2007.  Second, she found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  Going to the next step of the sequential evaluation process, the ALJ concluded that since her alleged onset date, Plaintiff had severe impairments including degenerative disc disease of the cervical, thoracic, and lumbar spine, uveitis with pars planitis, and osteoporosis.  After April 1, 2013, Plaintiff also suffered from remitting relapsing multiple sclerosis.  The ALJ also found that these impairments did not, prior to April 1, 2013, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1), but they did so after that date.

Moving to the next step of the sequential evaluation process, the ALJ found that prior to her disability date, Plaintiff could work at the light exertional level with frequent climbing of ramps and stairs, occasional climbing of ladders, ropes, and scaffolds, and no exposure to hazardous conditions including unprotected heights and moving machinery.  Also, due to her eyesight and reduced concentration, Plaintiff could do only simple, routine tasks and required the use of 3.0 magnifying glasses secondary to difficulty reading fine print.

With these restrictions, the ALJ concluded that Plaintiff could, prior to April 1, 2013, do her past jobs of deli clerk, customer service representative, and hotel front desk clerk. Consequently, the ALJ decided that Plaintiff was not entitled to benefits prior to April 1, 2013 and was not under a disability at any time prior to her last insured date.

### VI. Plaintiff's Statement of Errors

In her statement of errors, Plaintiff raises these issues: (1) the ALJ failed to afford Plaintiff a full and fair hearing by failing to submit medical interrogatories to an opthalmologist; and (2) the ALJ erred by failing to find that Plaintiff's conditions equaled a Listing-level impairment.  These issues are considered under the following legal standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A. Full and Fair Hearing

Plaintiff's first claim is that the ALJ did not follow through adequately on the need to obtain additional medical opinions concerning the limitations imposed by her various conditions. The ALJ did conclude that a medical opinion was needed, which is why interrogatories were sent to Dr. Richards (who is not an opthalmologist). As noted above, his first response was that the records were not complete enough to allow him to express an opinion. His second response, after viewing additional records, was to find that she equaled the Listing for multiple sclerosis as of April 1, 2013, but not before. He did not, as Plaintiff points out, separately assess Plaintiff's functional capacity before that date, other than to say that her limitations were not of Listing severity. Plaintiff contends that the ALJ needed expert medical advice on the issue of her visual functional capacity prior to April 1, 2013, and that the failure to obtain it requires a remand.

The ALJ found that Plaintiff did have a history of bilateral intermediate uveitis consistent with pars planitis. (Tr. 19). She also noted Plaintiff's report of the symptoms contained in the medical records and her long history of treatment with The Retina Group. That history included reports both of worsening symptoms and substantial improvement. The ALJ concluded that the treatments Plaintiff had received "appear to have been relatively effective in controlling her symptoms." (Tr. 24). The administrative decision then explains the basis for that conclusion with detailed reference to treatment notes. Id. It also notes that none of the records concerning her eye condition contain any functional limitations. As a result, the ALJ made a residual functional capacity evaluation that took Plaintiff's vision problems into account only as they related to decreased concentration and the need to use magnifying lenses to read fine print. Despite this analysis, Plaintiff argues that the record

-8-

did not permit the ALJ to make that finding without additional expert opinion evidence due to the unusual nature of Plaintiff's eye impairment.

In Smith v. Comm'r of Social Security, 2010 WL 6303884, *6 (S .D. Ohio Nov 24, 2010), adopted and affirmed 2011 WL 1125031 (S.D. Ohio Mar 24, 2011), this Court said:

> As the court observed in Griffin v. Astrue, 2009 WL 633043 *10 (S.D. Ohio March 6, 2009), "[t]he primary function of a medical expert is to explain, in terms that the ALJ, who is not a medical professional, may understand, the medical terms and findings contained in medical reports in complex cases."  Whether to call such an expert to testify is generally left to the discretion of the ALJ, see id., quoting Haywood v. Sullivan, 888 F.2d 1463, 1467–68 (5th Cir. 1989), and the Court may overturn the exercise of that discretion only if it appears that the use of a medical consultant was necessary — rather than simply helpful — in order to allow the ALJ to make a proper decision.  See Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 214 (6th Cir. 1986), quoting Turner v. Califano, 563 F.2d 669, 671 (5th Cir. 1977).

The Court does not doubt Plaintiff's contention that uveitis and pars planitis are rare disorders, but there are a number of social security decisions where those disorders are among the impairments from which the claimant suffered.  See, e.g., Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016);  Henshaw v. Colvin, 2016 WL 541408 (E.D. Cal. Feb. 11, 2016).  This Court does not believe it appropriate to adopt a hard and fast rule that when a claimant suffers from these conditions, an ALJ must always solicit testimony or opinions from an opthalmologist.  Further, in this case, the records of Plaintiff's treatment do record her symptoms and the effectiveness of the ways in which these conditions were treated, and they allowed the ALJ to make findings about functional limitations.  The Court does not view this as a case where such opinion evidence was necessary in order for the ALJ to understand either the nature of the diseases or

the functional limitations they impose. That is so despite Dr. Richards' observation that these impairments were significant. The ALJ made that findings as well, but had enough evidence from which to craft a visual residual functional capacity. Since the ALJ did not need medical expertise to do that, and because the ALJ thoroughly reviewed the records and reached conclusions which a reasonable person could reach, the Court finds no merit to Plaintiff's first statement of error.

B. <u>Equaling a Listing-Level Impairment</u>

Plaintiff's second contention is that the ALJ erred by not considering whether her visual impairment equaled any of the Listings for vision problems. She notes that although loss of visual acuity, which is addressed in the Listing, was at times a symptom of her impairments, she also suffered from other symptoms like flashes, watering, pain, photophobia, and redness, which also affected her vision and which do not correspond exactly to any group of symptoms addressed in a specific section of the Listing. Further, she notes that uveitis can be associated with inflammatory arthritis, raising the possibility that she equaled one of the Listing sections which address arthritis. By looking only at the literal requirements of sections 2.02, 2.03, and 2.04, and not considering the question of equivalency, she asserts that the ALJ committed reversible error.

It is true that, in the discussion of Plaintiff's vision problems, the ALJ only considered whether those problems caused the symptoms described in the three sections of the Listing to which Plaintiff's brief refers. (Tr. 17). The ALJ concluded that "the criteria of these sections have not been met," <u>id</u>., and did not comment of the issue of equivalency. The Commissioner argues that any such omission was not material because Plaintiff has not argued or demonstrated that her combination of symptoms could have been considered the equivalent of any of the sections of the Listing to which she refers.

-10-

The Court views this issue as similar to a claim that an ALJ errs by not considering a specific section of the Listing at step three of the sequential evaluation process.  When the administrative decision does not discuss a section of the Listing which appears to be pertinent to one of the claimant's impairments, this Court has held that error occurs if "'it is possible that the evidence [claimant] put forth could meet this listing.'" Reiser v. Comm'r of Social Security, 2012 WL 6138987, *6 (S.D. Ohio Dec. 11, 2012), adopted and affirmed 2013 WL 139890 (S.D. Ohio Jan. 10, 2013), quoting Reynolds v. Comm'r of Social Security, 424 Fed. Appx. 411, 416 (6th Cir. April 1, 2011). Consequently, the pertinent question here is whether there was enough evidence of equivalence in this case to trigger a duty on the part of the ALJ to discuss that issue.

Although Plaintiff contends that she has made "a clear argument for equivalence," Doc. 19, at 3, the Court does not see it that way.  "[A]n ALJ's Listing analysis must be viewed in light of the evidence the claimant presents." Moran v. Comm'r of Social Security, 40 F.Supp.3d 896, 924 (E.D. Mich. 2014).  There is no medical opinion in this case that the combination of Plaintiff's symptoms is the equivalent of any section of the Listing, and medical equivalence is ordinarily a medical judgment.  The state agency reviewers did not find medical equivalence; neither did Dr. Richards.  Given the ALJ's findings that the impact of Plaintiff's visual impairments was certain restrictions in her ability to concentrate and to read fine print - findings which the Court concludes are supported by substantial evidence - there is no reasonable likelihood that the ALJ would have found these same symptoms to be the equivalent of any section of the Listing.  Based on the evidence of record, any error committed by the ALJ in not expressly addressing the issue of medical equivalence is harmless.

VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Commissioner.

### VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge